Midland Credit Company *v.* White (et al., Appellant).

Argued April 15, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ. (HIRT, J., absent).

*Archibald M. Matthews,* for appellant.

*Samuel M. Rosenzweig,* with him *Alexander Ogle,* for appellee.

OPINION BY ROSS, J., July 21, 1955:

This is the second time this case is before us, on precisely the same legal issue. In *Midland Credit Co. v. White,* 175 Pa. Superior Ct. 314, 104 A. 2d 350, we held that the lower court erred in receiving in evidence testimony concerning telephone conversations in which the caller was not properly identified as the plaintiff; and we awarded a new trial. We regret that we must remand the case once more for retrial, but justice requires it.

This prolonged litigation had its inception in a replevin action instituted by Midland, a finance company, to obtain possession of an automobile leased originally by Stanford White from a dealer, who then assigned the bailment lease to Midland. White, while driving on the Pennsylvania Turnpike, was involved in a collision which resulted in considerable damage to the car. It was removed to appellant Herring's garage for repairs. White then defaulted in his monthly payments to Midland, and it instituted the replevin action. Herring defended, claiming a lien for the repairs, which Midland had refused to pay. At the trial Herring and his employe were allowed, over objection, to testify to certain telephone calls received by them from persons purporting to represent Midland, which calls indicated the finance company's assent to the repairs, with consequent liability on its part for the lien. After verdict for Herring and refusal of Midland's motions for new trial and judgment n.o.v., Midland appealed to this Court. We awarded a new trial because neither Herring nor his employe could identify by voice the persons placing the incoming calls and Herring had produced in evidence no circumstances sufficient to indicate that the caller spoke with authority from Midland.

At the retrial Herring offered to prove such circumstances. The trial court, in its effort to comply with our decision, was overly cautious in restricting his offer of proof and he was not permitted to introduce in evidence the corroborative evidence. A verdict was directed for Midland and, after refusal of his motion for new trial, he has appealed to us.

In the first case (*Midland Credit Co. v. White*, supra, 175 Pa. Superior Ct. 314, 104 A. 2d 350), at pages 318-319, we stated the applicable law: "Here, it will be recalled, the appellee and his employe were the re-

cipients of the telephone calls. The general rule applicable to such situation is set forth in Burton v. Pacific Mut. Life Ins. Co., 368 Pa. 613, 84 A. 2d 310, where, at page 617, the Supreme Court, speaking through Mr. Chief Justice Drew, stated: 'It is now well settled that the recipient of a telephone call may not testify as to the conversation unless the voice of the caller can be identified: Smithers v. Light, 305 Pa. 141, 157 A. 489.' . . . In the Reach case [Reach v. National Bedding Co., 276 Pa. 467, 120 A. 471], although no objection to the evidence was raised on the ground of lack of identification, Supreme Court stated, at page 471: 'It may, however, not be amiss to point out, that telephone conversations with unidentified persons have been received in evidence, where circumstances following the conversation indicate that the person who spoke was speaking with authority: 22 Corpus Juris 193; 1 Ruling Case Law 477.' In that case, the telephone conversation was followed by the shipping by the one initiating the call of the material that had been the subject matter of the conversation. Here there is no such circumstance of action on the part of the one allegedly initiating the call."

In our opinion, the offers of proof made by Herring were sufficient to enable him to bring in the authenticating circumstances and hence the evidence of the calls themselves was competent. His general offer of proof included, inter alia: That Midland called on several occasions to inquire about the repairs and stated that when the car was finished it would take it; that Midland sent for the car two days after the caller had stated it would; that after White had told Herring he no longer had an interest in the car Midland telephoned to say that White had defaulted in his payments and was, therefore, not entitled to possession of it. By the witness Ray Spangler, an employe of Herring, the lat-

ter offered to prove that while the repairs were in progress he received a call from persons stating they represented Midland and that they had advised him that White had defaulted and that the car was not to be released to anyone but Midland, at which time they again inquired as to progress of the repairs and told him they would come for the car when completed; that he later received a call from persons purportedly representing Midland and in response to inquiry he informed them the repairs were then completed and they told him they would come for the car; that two days later, accordingly, Midland did send for the car. Herring also, by an insurance agent who wrote the policy of insurance on the car, and by a representative of the insurance company, offered to show that Midland had been notified of the accident and of the fact that it was in his garage for repairs; that while the repairs were in progress Midland made demand upon the insurance company for payment thereof—this for the purpose of establishing Midland's knowledge that the repairs were being made by him. Other witnesses were offered to substantiate these allegations.

In our first decision we expressed the opinion that no circumstances had been produced to point to emanation of the calls from Midland and hence the general rule applied and admission of the contents of the calls in evidence was error. Here, however, the circumstances offered are sufficiently corroborative to take the case to the jury. One such pertinent circumstance is Midland's sending for the car within two days after the caller said it would. Likewise, the call concerning the lessee White's default coming, as it did, at the time White himself had informed Herring of the default of his payments, shows intimate knowledge of the situation on the part of the caller. Such intimate knowledge of the subject matter on the part of the caller,

standing alone, is inconclusive. It is the totality of circumstances here present which impels us to award a new trial in order to permit appellant to present his evidence. Here we have the general picture of an offer to prove inferred knowledge on the part of Midland that the repairs were being made; its implied acquiescence from its failure to object and halt the repairs after knowledge of the situation had given rise to a duty to speak; and its claim against the insurance company after White's default, from which we imply that it realized that it or its insurance carrier, and not White, would ultimately be liable for the cost of the repairs. These allegations, if proved, were sufficient to establish the identity of the caller, and it was error to exclude it from the jury's consideration.

Herring's answer alleged completion of the repairs as of March 7, 1952, and most of the telephone conversations here in question occurred thereafter. Consequently, Midland contends that even assuming the calls to have been made, no implied promise to pay for the repairs arose since they had already been completed and, therefore, it would be liable only upon proof of an express promise. In support of its position it cites *Landis v. Royer*, 59 Pa. 95, 98: ". . . a benefit derived from unsolicited services of another creates a moral obligation to compensate that other, and though not enough without a previous request to give rise to an implied, it is sufficient to sustain an express assumption". Admittedly there is no express promise to pay for the repairs in this case.

However, at the trial Herring testified that the March 7th date was a mistake and that actually the repairs were not completed until sometime in May, and he asked leave to amend to set forth the date as sometime in May to conform to his proof. Doubtless because of its ruling that the telephone conversations—the only

basis of liability—were inadmissible, the learned court below pro forma refused the motion to amend. At the retrial, however, we see no reason why Midland would be prejudiced by such amendment since Herring's credibility regarding the completion date as of May rather than March would be for the jury.

Appellee's final argument that there was insufficient proof of damages is without substance since such proof, of necessity, is predicated on initial liability. With the exclusion of evidence of the telephone calls as the basis for liability, the necessity for proof of damages was obviated.

Judgment is reversed and a new trial awarded.