548 A.2d 693

Robert J. Hannon *v.* City of Philadelphia and Thomas Littel. City of Philadelphia, Appellant.

Robert J. Hannon, Appellant *v.* City of Philadelphia and Thomas J. Littel, Appellees.

*Miriam B. Brenaman,* Assistant City Solicitor, with her, *Norma S. Weaver,* Chief Deputy in Charge of Claims, *Barbara R. Axelrod,* Divisional Deputy in Charge of Appeals, and *Seymour Kurland,* City Solicitor, for appellant, City of Philadelphia.

*Sol H. Weiss,* with him, *Alan Starker, Anapol, Schwartz, Weiss & Schwartz,* for appellee, Robert Hannon.

OPINION BY SENIOR JUDGE BARBIERI, October 13, 1988:

Robert J. Hannon appeals an order of the Philadelphia County Court of Common Pleas denying in part and granting in part post-trial motions filed by the City of Philadelphia (City). The City has cross-appealed from that same order.

This matter arose out of a single vehicle accident which occurred on November 25, 1981, on Bells Mill Road, a curving two-lane road, located in the northwest part of the City. Hannon worked with Thomas Littel and the two carpooled to and from their place of employment. The men traveled Bells Mill Road on a daily basis and Littel was driving on the day of the accident. At approximately 4:30 p.m. on November 25, 1981, Littel and Hannon left work to go home. On their way they stopped and had dinner at the Fiesta Motor Lodge where Littel testified he had one beer. They then proceeded to a bar where Littel testified he consumed ap-

proximately two more beers. After that, Littel stated he and Hannon drove back to the Fiesta Motor Lodge where he had two or three more beers. Littel estimated that he and Hannon left the Fiesta Motor Lodge around 10:00 p.m.

On the way home, Littel testified he was attempting to light a cigarette when the car he was driving struck a concrete headwall. The headwall was located approximately 3½ feet off the side of the road and had been built in 1914 as part of a culvert system to control water run-off.

Hannon sustained serious injuries in the accident. He subsequently brought a negligence action against Littel and an action against the City for negligent maintenance of streets and real property pursuant to Sections 8542(b)(3) and (6) of the Judicial Code (Code), 42 Pa. C.S. §8542(b)(3), (6). After the trial, the jury returned a $1,000,000.00 verdict in favor of Hannon, finding Littel 72% negligent and the City 28% negligent. The City filed several post-trial motions which, were denied in part and granted in part. The trial court granted the City's post-trial motion to mold the verdict to conform with the $500,000.00 cap under the Code[1] as well as its motion to deny delay damages on the basis that they were waived.

On appeal to this Court, Hannon argues that the Code violates both the federal and state Constitutions and that the trial court erred in denying his request for delay damages. The City, by way of a cross-appeal, requests a new trial on the basis that the trial court erred in permitting testimony of a previous automobile accident involving the same headwall to serve as notice to the City of a dangerous condition; in refusing to permit testimony as to Hannon's consumption of alcohol on the

---

[1] Section 8553(b) of the Code, 42 Pa. C. S. §8553(b).

night of the accident; and in its charge to the jury. The City also contends that the trial court made several erroneous rulings during testimony by Hannon's expert witness. We agree with the City's contentions that the trial court erred in several respects.

First, the trial judge erred in permitting Hannon to introduce evidence of a single prior accident involving the headwall in question to fulfill the notice provisions of Section 8542(b)(6)(i) of the Code, 42 Pa. C. S. §8542(b)(6)(i).[2]

Hannon's expert's theory of the accident was that the proximity of the headwall to the roadway and the fact that the motorist comes upon it after completing a curve combine to aim a vehicle at the headwall.

Hannon introduced testimony by a police officer who was involved in an accident involving the same headwall on February 10, 1979. On that day, the police officer was driving a van in a westerly direction along Bells Mill Road. As he approached the headwall, a vehicle in the east-bound lane, passed another vehicle and came over into the witness' lane, forcing his van off the roadway. The witness testified there was ice on the edge of the road and his van slid on the ice into the headwall. As we stated, Hannon's theory of the case against the City was that the curvature of the road and proximity of

---

[2] This section of the Code provides as follows:

(6)  Streets.—

(i)  A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

the headwall to the roadway had caused Littel's vehicle to crash into the headwall.

The City claims that the trial court erred in admitting the allegedly irrelevant evidence and also that it was prejudiced thereby, citing *Whitman v. Riddell*, 324 Pa. Superior Court 177, 471 A.2d 521 (1984). The plaintiff's decedent in *Whitman* was involved in an accident at an intersection in the city of Scranton when an overhead traffic light turned green in two directions at the same time. There the Superior Court stated that "[i]n certain circumstances 'evidence of similar accidents occurring *at substantially the same place under the same or similar circumstances* may, in the sound discretion of the trial judge, be admissible to provide constructive notice of a defective or dangerous condition and the likelihood of injury.' " *Id.* at 180-181, 471 A.2d at 523, (citing *Stormer v. Alberts Construction Co.*, 401 Pa. 461, 466, 165 A.2d 87, 89 (1960) (emphasis in original)).

The Superior Court held in *Whitman,* that the trial court committed reversible error by admitting evidence of thirty-six prior accidents at the same intersection because these prior accidents were caused by other factors which would not have put the city on notice that the traffic light was defective.

The prior accident in this case was caused by illegal behavior on the part of an approaching motorist and ice along the side of the roadway. These circumstances are in no way related to the accident in question and clearly may not serve as notice to the City that the headwall itself is a dangerous condition of the roadway. Therefore, the trial court erred by admitting evidence of that prior accident.[3]

---

[3] We note that counsel for the City raised timely objections to the testimony concerning the prior accident. Notes of Testimony from November 12, 1986 trial at 90. This objection was preserved in post-trial motions.

The City also contends that the trial court erred in refusing to permit it to elicit testimony as to the plaintiff's consumption of alcohol on the night of the accident. The trial court ruled that this testimony was irrelevant as Hannon was not driving and such evidence could not be used to impeach his credibility since he had no recollection of the accident. The trial court reasoned further that Hannon, as a passenger, was not required to exercise the same degree of care as the driver and evidence of his drinking would be prejudicial.

The City maintains that this ruling effectively prohibited it from impeaching portions of Hannon's testimony. Hannon testified that Littel only had a couple of drinks on the night in question; that they both left the Fiesta Motor Lodge at approximately 11:00 p.m.; he had confidence in Littel's driving on the way home that night; and that there was nothing unusual about Littel's driving prior to the accident.[4]

Evidence of Hannon's drinking is relevant for two reasons. First, such evidence is relevant to impeach Hannon's testimony relating to whether a co-defendant was or was not negligent. Whether or not Hannon remembered the actual accident itself, evidence of his drinking is relevant to his testimony as to how long the two men stayed at the Fiesta Motor Lodge, the number of drinks Littel consumed and Littel's sobriety. Secondly, evidence of Hannon's drinking is relevant to the issue of contributory negligence.

Related to this issue is the City's contention that the trial court erred in refusing to charge on assumption of risk. Hannon cites *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981),

---

[4] Notes of Testimony from November 19, 1986 trial at 28-29; 36-39; 57.

for the proposition that the defense of assumption of risk has been virtually abrogated in this Commonwealth. However, *Rutter* was a plurality opinion only and according to the Supreme Court's later decision in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), *rev'g* 310 Pa. Superior Court 433, 456 A.2d 1013 (1983) and the Superior Court's decision in *Malinder v. Jenkins Elevator and Machine Co.*, 371 Pa. Superior Ct. 414, 538 A.2d 509 (1988),[5] it appears the defense still survives to some extent in Pennsylvania.

The comment to Section 496 A of the Restatement (Second) of Torts separates the doctrine of assumption of risk into four categories, as follows:

1. Type 1—Express assumption of the risk- where the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for the plaintiff's protection.

2. Type 2—Implied assumption of the risk- where the plaintiff has entered into some relation with the defendant which the plaintiff knows to involve the risk and is, thus, regarded as having impliedly relieved the defendant of a duty to protect plaintiff against the risk.

3. Type 3—Implied assumption of the risk- where the plaintiff is aware of a risk created by the defendant and proceeds or continues voluntarily to encounter it and the plaintiff's conduct in so doing is entirely reasonable in that the risk is small and/or the plaintiff proceeds with all due caution.

---

[5] The Superior Court found the facts in *Malinder* to be substantially similar to those in *Carrender*, and emphasized that its decision did not change the state of Pennsylvania law concerning the viability of the assumption of risk defense or the impact of the comparative negligence statute on that defense.

4. Type 4—Implied assumption of the risk-where the plaintiff voluntarily encounters a known risk created by the defendant's conduct but the plaintiff acts unreasonably in doing so and, therefore, is contributorily negligent.

*Rutter*, 496 Pa. at 607-08, 437 A.2d at 1206-07.

The Superior Court in *Carrender* noted that this fourth type of assumption of risk is synonymous with contributory negligence. The plaintiff, in *Carrender*, brought an action against the owner of a parking lot and a chiropractic clinic after she slipped and fell on a patch of ice upon getting out of her car. The plaintiff who wore a prosthesis on her lower left leg, admitted she was aware of the ice and still attempted to walk on it. Our Supreme Court ruled that the ice patch was obvious and that therefore the defendants owed no duty to the plaintiff. In reversing the Superior Court's denial of the appellant's motion for judgment n.o.v., the Court went on to state that the plaintiff could not recover under the comparative negligence statute.[6] The Court explained that for fault to be apportioned under that statute, "there must be two negligent acts: a breach of duty by the defendant to the plaintiff and failure by the plaintiff to exercise care for his own protection." *Carrender* at 188, 469 A.2d at 125. In such a situation, the defense of assumption of risk overlaps that of contributory negligence. This is the situation in the case at hand. Therefore, we hold that the trial court did not err in charging only on contributory negligence and not on assumption of risk as well.

The City also contends that the trial court erred by including a charge on imputed negligence. The City

---

[6] 42 Pa. C. S. §7102. The plaintiff in *Carrender* argued that the comparative negligence statute removed the defense of assumption of risk as an absolute bar to recovery and incorporated the defense into the framework of comparative negligence.

argues that the charge was not only irrelevant to the case but prejudicial in that it virtually erased the value of the charge on contributory negligence.

The disputed portion of the charge is as follows:

> A plaintiff is not barred from recovery against the negligent defendant by the contributory negligence of a third person, unless the relationship between the plaintiff and the third person is such that the plaintiff would be vicariously liable as a defendant for the negligent acts of the third person.
>
> Therefore, if you find Mr. Littel was negligent, you may not impute the negligence to Mr. Hannon simply because he was a passenger in Mr. Littel's car. However, you must still consider whether Mr. Hannon's actions in and of themselves made him contributorily negligent.[7]

There is no evidence in the case which would permit what is essentially a charge on vicarious liability. As the City points out, the charge implies that Littel was a "third party" capable of "contributory negligence" when in actuality he was a defendant. Therefore, he could not be charged with contributory negligence but instead could assert it, as could the City, as an affirmative defense.

Counsel for the City took an exception to the charge on imputed negligence, arguing it was irrelevant and confusing to the jury. In its opinion, the trial court states that the charge was not directed to the City but referred instead to whether Littel's negligence could be imputed to Hannon. The trial court also incorrectly states that the City waived any objection to the charge. In fact, the record reveals that the trial court expressly

---

[7] Notes of Testimony from trial on November 25, 1986 (N.T. 11/25/86) at 27.

granted the City an exception to the charge[8] so the issue was properly preserved for our consideration.

As there was no issue of vicarious liability in the case before it, the jury could not help but be confused by the imputed negligence charge. Although the trial court accurately charged the jury that an issue in the case was whether Hannon was contributorily negligent, the imputed negligence charge was undoubtedly confusing. As the City points out, the jury could very well have understood the trial court to be saying that even if Littel was negligent, Hannon could not be as well because he was only a passenger in the car and no actions on his part contributed to the accident. "The primary duty of a trial judge in charging a jury is to clarify the issues so that the jury is able to comprehend the questions they are to decide." *Crotty v. Reading Industries, Inc.*, 237 Pa. Superior Ct. 1, 345 A.2d 259 (1975). Here, the charge would easily have misled the jury. In light of the fact that Hannon was found not to be contributorily negligent, we cannot say the error was harmless.[9] We agree with the City that the disputed portion of the charge was prejudicial error requiring a new trial.

We hold that those errors on the part of the trial court which we have discussed herein require that we remand this matter for a new trial.[10]

---

[8] N.T. 11/25/86 at 45-47.

[9] *See Ackerman v. Delcomico*, 336 Pa. Superior Ct. 569, 486 A.2d 410 (1984), where the Superior Court reversed and remanded for a new trial noting that an erroneous charge to the jury involving the presumption of intoxication under Section 1547 of the Motor Vehicle Code, 75 Pa. C. S. §1547, could have misled the jury to the extent that it found the defendant not negligent. Therefore, the Court held that the error was sufficiently prejudicial to warrant a new trial.

[10] In light of this result, we need not address the City's remaining contentions. With respect to those issues raised by Hannon,

ORDER

AND NOW, this 13th day of October, 1988, that portion of the order of the Philadelphia County Court of Common Pleas, in the above-captioned matters, dated June 9, 1987, denying the City of Philadelphia's Motion for a New Trial, is hereby reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.

Jurisdiction relinquished.

This decision was reached prior to the resignation of Judge MACPHAIL.

---

our Supreme Court has held the relevant provisions of the Act to be constitutional, *Smith v. City of Philadelphia*, 512 Pa. 129, 516 A.2d 306 (1986), *appeal dismissed*, U.S. , 107 S.Ct. 1265 (1987) and the request for delay damages was clearly waived in light of *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), which held that petitions for delay damages must be presented within five days of a jury verdict or arbitration award.